### WILLIAMS v. PEARMAN.

(Court of Civil Appeals of Texas. Dallas. Feb. 21, 1914.)

1. SPECIFIC PERFORMANCE (§ 126*)—RELIEF—DAMAGES IN PART.

Where the contract is to purchase land for a money consideration, and vendor cannot convey all of the land which he agreed to convey, the purchaser may compel a conveyance of the land which vendor is able to convey, with an abatement of price for that part which he cannot convey.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 55, 401–405; Dec. Dig. § 126.*]

2. SPECIFIC PERFORMANCE (§ 129*)—EXCHANGE OF LAND—RELIEF—DAMAGES IN PART.

Specific performance of an agreement to exchange lands will not be decreed as to a part of the land to which defendant has title, with a money judgment against defendant for the value of that part which he is unable to convey, since that would require the performance of a contract which defendant did not make; and hence, where defendant agreed to convey to plaintiff, 875 acres, and also a 40-acre tract if defendant secured possession thereof, in consideration of plaintiff conveying to defendant a half interest in other property, one-half of the mortgage on which defendant agreed to assume, and of the execution of plaintiff's notes to defendant for a certain sum in case defendant could convey the 40 acres, specific performance could not be decreed against defendant as to the part of the land he could not convey, with damages for the value of the remainder.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 420–423; Dec. Dig. § 129.*]

Appeal from District Court, Navarra County; H. B. Daviss, Judge.

Suit by N. B. Pearman against J. F. Williams, individually and as executor of B. J. Williams, and others. From a judgment for plaintiff, the defendant named appeals. Reversed and remanded.

Spell & Sanford, of Waco, for appellant. Richard Mays, of Corsicana, and Alva Bryan, of Waco, for appellee.

TALBOT, J. N. B. Pearman brought this suit against appellant J. F. Williams, individually and as executor of the estate of B. J. Williams, deceased, and others, but all of the defendants except J. F. Williams, individually and as said executor, were thereafter dismissed. Plaintiff alleged that in July, 1911, defendants were possessed of a certain 875.2 acres of land in Henderson county, Tex.; that on the 7th day of August, 1911, defendant J. F. Williams, for himself and as agent of the other defendants, and as such executor, entered into a certain contract in writing with plaintiff, whereby said Williams obligated himself to convey to plaintiff the above-described Henderson county land, and also 40 acres out of said survey, provided said Williams secured possession of same, for a consideration of $17.50 per acre, and that under said contract plaintiff was to convey to defendant Williams a one-half undivided interest in lot 7, block 6, of the town of Aurora, Lawrence county, Mo.; that said contract further provided for an exchange of said properties, and that plaintiff was to execute to defendant Williams three notes for the sum of $1,015.33⅓ each; but, in event the 40 acres mentioned in said contract, as being in addition to said 875.2 acres, could not be conveyed, plaintiff was to execute to the said Williams three notes for $773 each, said notes to bear 8 per cent. interest; that defendant Williams had failed and refused to carry out his contract, though plaintiff was ready, able, and willing to carry out his part; that if the court should decide that plaintiff is not entitled to specific performance of said contract by defendants in whole or in part, then

in the alternative he alleges that from the terms of said contract plaintiff was to pay defendant the sum of $17.50 per acre for said land, and defendant was to pay plaintiff the sum of $13,000 for said Aurora property and assume an indebtedness of one-half of $6,000 against said property; that the market value of said 875²/₁₀ acres of land above described, on or about the 7th day of September, 1911, was $12 per acre; that the market value to an undivided half interest of said Aurora property on or about said date was $5,000; that by reason of the failure and refusal of defendants to carry out and perform said contract plaintiff is entitled to recover the difference in value between the respective properties agreed to be exchanged. Plaintiff prayed for judgment that defendant perform said contract with good and sufficient title to the Henderson county land, upon plaintiff executing a good title to said Aurora property, but that if the court decided that plaintiff was not entitled to specific performance, he then prayed for judgment against J. F. Williams individually and as such executor and agent, for one-half undivided interest in said 875.2 acres and abatement of price for that part which defendant Williams could not convey, and that if plaintiff was not entitled to specific performance against any of said defendants, he have judgment for his damages, and such other relief as he was entitled to. Defendant J. F. Williams answered by general demurrer and general denial, and alleged that said contract was procured through the fraud of one W. P. Bryan, who purported to act as his agent, and which fraud was participated in by plaintiff, and further denied that he had authority to represent the other defendants therein. There was a trial by jury, and the court instructed the jury to find the value in December, 1911, of the 875.2 acres, and to find for plaintiff against J. F. Williams individually, and as such executor for an undivided one-half interest in the 875.2 acres, and also for damages, if any, equal to one-half the value of the Henderson county land in December, 1911, less $2,319, and further to find for defendant Williams the title and possession of an undivided one-half interest in said Aurora property subject to mortgage existing against the same. The jury returned a verdict as directed by the court, and awarded plaintiff damages in the sum of $1,181.80. Judgment was entered in accordance with the jury's verdict, and to the effect that plaintiff recover of defendant personally the said sum of $1,181.80, with interest thereon from date of judgment at the rate of 6 per cent. per annum, together with all costs of suit. From this judgment defendant Williams appealed.

The question, presented in slightly different form by appellant's several assignments of error, is whether or not the contract between appellant and appellee is divisible in the sense that specific performance thereof can be decreed in part and damages awarded in part as against either party, where that party has not title to all of the land contracted by him to be conveyed? The contract in question was clearly one for the exchange of the respective tracts of land mentioned in it and the execution by plaintiff of his notes representing the excess in value of defendant's land over the plaintiffs, taking the mortgage on plaintiff's land into consideration. The proposition contended for by appellant is that, "where there is a contract to exchange land and defendant is unable to convey the entire tract which he agreed to convey, plaintiff cannot, by judgment, have specific performance in the way of conveyance of that portion of the contract to which defendant has title, and compensation in the form of the money value for that portion which defendant is unable to convey, because the effect of same would be for the court to make a new contract for the parties, and a different one from that entered into between them, and which no court has authority to do."

[1] The rule, though not universal, is well established in this and some other jurisdictions that, in a contract for the sale and purchase of land for a money consideration, the vendor whose estate is less than or different from that which he agreed to sell, or who cannot give the exact subject-matter embraced in the contract, will not be allowed to set up his inability as a defense against the demand of the purchaser who is willing to take what he can get with an abatement out of the purchase money for that which the vendor cannot convey. Austin v. Ewell, 25 Tex. Sup. 407; Heirs of Roberts v. Lovejoy, 60 Tex. 253; Watson v. Baker, 71 Tex. 739, 9 S. W. 867; Hazzard v. Morrison, 130 S. W. 244; Lucas v. Scott, 41 Ohio St. 640; 1 Story's Equity Jurisprudence, § 799; 26 Am. & Eng. Enc. Law (2d Ed.) pp. 83–85–87; Waterman on Specific Performance of Contracts, § 499.

[2] In cases, however, of which we have knowledge, where the contract provided for an exchange of lands, as in the case at bar, the rule just stated was not applied. These cases do not seem to be numerous, but those to which our attention has been called clearly and emphatically declare, in effect, as we understand them, that where the agreement is for an exchange of lands, to compel a specific performance thereof as to that portion of the land to which the defendant has title, and to render a money judgment against him for the value of that portion which he is unable to convey, would require the performance of a contract which the defendant did not make. The facts in the case of Sternberger v. McGovern, 56 N. Y. 12, were somewhat similar to those in the instant case. They were, in substance, as stated in appellant's brief, that the parties entered into a written contract by which plaintiff agreed to sell and convey to defendants certain premises for $125,000,

payable, $20,000 by defendants assuming two mortgages to that amount thereon, $64,000 by a deed of certain premises owned by defendant, and the balance by bond and mortgage. Defendant agreed to sell to plaintiff said premises owned by him for $82,500, payable, $18,000 by plaintiffs assuming a mortgage for that amount and the balance by deed of the premises first mentioned. Defendant failed to perform because his wife would not join in the deed. The court held that the contract was one to exchange lands, with a provision for adjusting the excess in value; that plaintiffs were not entitled to a specific performance of the contract so far as defendant was enabled to perform with an allowance for the value of inchoate right of dower belonging to the wife of defendant, nor could the defendant, since he was unable to give a good title on his part, be compelled to take title and to pay plaintiffs for their property the contract price in cash. It appears from the court's opinion that counsel for the plaintiffs therein cited the court to authorities holding that where the contract was to sell land for a money consideration, the plaintiff was entitled to have the contract specifically performed as far as the defendant could perform it, and to have an abatement out of the purchase money or compensation for any deficiency in the title, etc.; but the court, in distinguishing such cases from the case it had under consideration, said: "Here the parties have agreed to exchange, in substance, one parcel of real estate for another, and for the payment by the defendant to the plaintiffs of the estimated excess in value of their parcels, by giving a general mortgage thereon, payable in the future; the value placed upon each parcel not being its estimated cash value, but its relative value with the other parcels; no cash payment by either. Under such a contract, to require the defendant to convey his property to the plaintiffs and pay such compensation as the court should determine its market value was impaired by the outstanding inchoate right of dower, or such sum at the real value of such right ascertained by the tables of mortality, would be harsh and oppressive. The defendant never made a contract to do this. To charge him with the difference in the market value would be unjust, as it is obvious that this incumbrance upon the title would impair that to a much greater extent than the real value of the right. To compel, him in effect, to purchase the right by paying the plaintiff therefor its value, determined by the table of survivorship and mortality, would in a case like this, be unjust. He, as we have seen, contracted for an exchange of his property for that of the plaintiff; under such a contract he ought not to be compelled to take the risk of the loss which the application of those tables to this particular case might subject him. * * * My conclusion, therefore, is * * * that the plaintiffs were not entitled to the specific performance of the contract, or any part of it. The plaintiffs must resort to their legal remedy, for the damages, if any, that they have sustained from the defendant's breach of the contract."

The same doctrine is enunciated and applied in the case of Saberski v. Velosky (Sup.) 11 N. Y. Supp. 668. In this case the plaintiff and defendant agreed in writing to an exchange of certain lands owned by them respectively. The property of the defendant was described as being 25 feet wide, but in fact it was only 24 feet wide. The plaintiff brought suit for specific performance and compensation for the deficiency of one foot. The court, in holding that plaintiff was not entitled to a specific performance, but that that he must rely on his remedy for damages, remarked: "The reason of the rule is that a decree would, in substance, call upon the party to perform a contract which he did not make. In the case at bar the agreement was for an exchange, the values and money to be paid, specifically fixed, for the barter. To compel the defendants to make compensation in money would, for them, create an obligation they have never assumed, nor intended to assume." Olson v. Lovell, 91 Cal. 506, 27 Pac. 765, a case decided by the Supreme Court of California, seems to be very much in point. In that case plaintiff Olson entered into a written contract with defendant, C. A. Lovell, and one F. E. Judson, by which plaintiff was to convey to defendant and Judson a tract of land in Placer county, and pay them $1,750, and defendant and Judson were to convey to plaintiff a certain lot in Sacramento, the contract being signed by plaintiff and defendant, but not by Judson, whose name was signed to the contract by defendant in this manner, "F. E. Judson, by C. A. L." Plaintiff tendered to defendant, Lovell, $875, being one-half of said $1,750, and to convey to him one-half of the Placer county land, and demanded of defendant that he convey to plaintiff his undivided half of the Sacramento land, but defendant declined to accept the offer of plaintiff, and refused to execute such deed, and on the trial plaintiff prayed that defendant be adjudged to convey to plaintiff said undivided one-half of said lot in Sacramento upon the payment by plaintiff to him of said $875, and his execution of deed to one-half of the Placer county land. There was a demurrer filed by plaintiff, which was sustained, and judgment rendered for defendant, Lovell. The court affirmed this judgment, and in doing so, among other things, said: "To compel defendant to convey an undivided half of the Sacramento lot would be to force him to perform a contract which he never made, or intended to make. He did not contract to convey his half of the lot, thus making plaintiff and Judson cotenants thereof, or to take in exchange an undivided half of the Placer county land, and half of the $1,750, thus becoming a ten-

ant in common with plaintiff. The contract upon its face clearly means that defendant and Judson were to convey the whole of their land in exchange for the whole of plaintiff's land, together with the whole of a certain named sum of money; and, if such contract cannot be specifically enforced as written, then it cannot be so enforced at all. We think, therefore, that the demurrer was properly sustained." To the same effect, in principle, is the case of Jackson v. Torrence, 83 Cal. 521, 23 Pac. 695.

As further illustrating the principle and well-settled doctrine that courts, in suits of this character, cannot and will not undertake to make or force the performance of a contract which a party has not himself made, may be cited the following authorities: Lone Star Salt Co. v. Texas Short Line Ry. Co., 99 Tex. 434, 90 S. W. 863, 3 L. R. A. (N. S.) 828; Galbreath v. Reeves, 82 Tex. 357, 18 S. W. 696; Blanchard v. Railway Co., 31 Mich. 52, 18 Am. Rep. 142. In the first case here cited it is said: "It is true, as contended by counsel for plaintiff, that in decreeing specific performance a court should, if necessary, determine by construction the legal effect of the agreement to be enforced, and enforce it according to its true meaning and intent; but it is not competent for the court to add to the contract a promise which the party has not made." In support of this declaration of our Supreme Court, the case of Blanchard v. Railway Company, supra, is cited; and in that case the Supreme Court of Michigan, in discussing the subject of specific performance of contracts, uses the following language: "As the court does not make contracts for parties, so it never undertakes to supply material ingredients which they omit to mention, and which cannot be legitimately considered as having been within their mutual contemplation. And where the party to perform is left by the agreement with an absolute discretion respecting material and substantial details, and these are therefore indeterminate and unincorporated until by his election they are developed, identified, and fixed as constituents of the transaction, the court cannot substitute its own discretion, and so by its own act perfect and round out the contract. If the court were to do this, it would be to assume a right not belonging to it, but one which the parties reserve to themselves."

In the case of Galbreath v. Reeves, supra, it was held that where one of the parties to an unexecuted contract for the exchange of lands failed to execute the agreement on his part, and the other party refused to complete the contract or to accept a substitute for the failure and offered and demanded a cancellation of the contract, it becomes the duty of the court to administer that relief. The court said: "The plaintiff had no right to demand a specific performance by Reeves of his part of the contract without at the same time discharging his own. He could not demand of Reeves that he should accept something not consented to by him as a substitute and proceed to execute the contract in other respects. And no more could the court add to the contract a circumstance not within the agreement of the parties, and compel its performance as changed by the court."

The record in the case before us discloses that the exchange trade as made by the parties was to the effect that appellant, Williams, should convey to plaintiff the 875.2 acres of land situated in Henderson county; and the appellee, Pearman, should convey to said Williams a one-half interest in the property situated in Aurora, Mo., Williams to assume one-half of a $6,000 mortgage on the Aurora property, and appellee, in the event the 40 acres could be conveyed by Williams, to execute his notes to appellant for $2,319. The judgment rendered not only divested title out of appellant to one-half interest in the 875.2 acres of land, but went further and gave a personal judgment against him in favor of appellee for $1,181.80, and ordered execution to issue therefor. It is manifest, we think, from the record, that neither the appellant nor appellee intended or contemplated when the contract upon which this suit is based was made, appellant should or would be called upon to pay any money. It was error, therefore, for the court, by instructions to the jury and by the judgment based on their verdict, to declare and adjudge appellee entitled to a specific performance in part of the contract sought to be enforced, and to damages in an amount equal to one-half of the value of the Henderson county land, less $2,319, the amount of the notes appellee was to execute and deliver to appellant as stipulated in the contract. This was requiring appellant to perform a contract which he never made; and this the court was not authorized to do. The contract being one for the exchange of lands, it is not divisible in the sense that specific performance can be decreed in part and damages awarded in part. This being true, appellee should have been confined in the trial of this case to his action for damages, the measure of which it seems would be the difference between the market value of the two tracts of land in question, taking into consideration the mortgage which appellant, by the terms of the contract, agreed to assume and the notes which appellee agreed to give.

The judgment is therefore reversed, and the cause remanded, to be tried in accordance with the views expressed in this opinion.

Reversed and remanded.